UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JOHN J. CONNOLLY, JR.               )
      Petitioner                    )
                                    )
VS.                                 )    CIVIL ACTION NO.  2004-CV-12396-JLT
                                    )
UNITED STATES OF AMERICA            )
      Respondent                    )
_____ )


**PETITIONER'S MOTION PURSUANT TO RULE 15 (a) AND (c) OF THE FED. R. CIV. P., FOR LEAVE TO AMEND AND SUPPLEMENT HIS ORIGINAL 28 U.S.C. §2255 PETITION WITH MEMORANDUM OF LAW IN SUPPORT THEREOF**

**NOW COMES** John J. Connolly, Jr. (hereinafter, the "Petitioner"), and hereby moves this Honorable Court for leave to amend and supplement his original *28* U.S.C. *§2255* petition with this Memorandum of Law, being filed herewith in conformity with Rules 15 (a) and (c) of the Federal Rules of Civil Procedure, and in accordance with the previous order of this court dated January 5, 2005.

Therefore, the Petitioner now sets forth and files the following memorandum in support of his said §2255 petition now before this court as follows:

1

## **TABLE OF CONTENTS**

**Table of Authorities** ...............................................................................................3

**I.  Relevant Procedural and Factual History** ................................................................5

**II.   The Petitioner was sentenced beyond the maximum penalty consistent with or reflected in the Jury's Verdict, or otherwise admitted by the Petitioner, being in clear violation of the Rule Announced in *Apprendi*, as further reaffirmed, defined and clarified by *Booker* .......................................................................................................5**

**III.  The *Booker* decision did not announce a new Rule of Criminal Procedure which was not previously dictated by precedent existing at the time the Petitioner's conviction became final.  Therefore, it must be given retroactive application in this particular case and facts before this court *sub judice*.** ………………………………………………………..8

    *A.*    Threshold Requirement ...............................................................................8

    *B.*    Apprendi 's Procedural Rule as Applied to The Guidelines Could Only Create
    *C.*    a Substantive Rule ……………………………………………………………12
    *D.*    *Teague* 's Exceptions……………………………………………………………14
    *E.*    *The Application of United States v. Booker* ..................................................17

**IV. Conclusion** .......................................................................................... 19

**TABLE OF AUTHORITIES**

**CASES**

*Apprendi v. New Jersey*, 550 U.S. 466 (2000) …………………………………….*passim*

*Blakely v. Washington*, 542 U.S. _____, 124 S. Ct. 2531 (2004) ……………….*passim*

*Bousley v. United States, 532 U.S. 614 (1998)* …………………………………*passim*

*California Department of Corrections v. Morales, 514 U.S. 499, 504-505 (1995)* …….7

*Collins v. Youngblood*, 497 U.S. 37, 43 (1990) ……………………………………….7

*Griffith v. Kentucky,* 479 U.S. 314, 328 (1987) ……………………………………….10

*In re Dean*, 375 F.3d 1287, 1289-90 (11th Cir. 2004) ……………………………….10

*In re Winship*, 397 U.S. 358 (1970) …………………………………………….16, 17

*Jones v. United States.* 526 U.S. 227 (1999) …………………………………...9, 14

*Mistretta v. United States*, 488 U.S. 361, 391 (1989) ……………………………….12

*Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000) ………………………….13

*Proctor v. United States,* No. 92-72-N-06 (E.D. Va. Nov. 7, 1994) ……………….13

*Richardson v. United States*, 526 U.S. 813 (1999) ……………………………….12, 13

*Ring v. Arizona*, 536 U.S. 584 (2002) …………………………………………….15, 16

*Robinson v. Neil*, 409 U.S. 505, 509 (1973) ……………………………………….12

*Santana-Madera v. United States*, 260 F.3d 133, 138-39 (2nd Cir. 2001) ……………. 13

*Sawyer v. Smith*, 497 U.S. 227, 242 (1990)…………………………………….  15

*Schriro v. Summerlin*, 542 U.S.    , 124 S. Ct. 2519 (2004) …………………….  15, 16

*Stinson v. United States*, 508 U.S. 36, 42 (1993) ……………………………………12

*Strickland v. Washington*, 466 U.S. 668 (1984) …………………………………….6

*Stringer v. Black*, 504 U.S. 222, 227 (1992) ……………………………………  7

*Teague v. Lane*, 489 U.S. 288 (1989) ……………………………………………*passim*

*United States v. Booker*, 543 U.S. ____, 125 S. Ct. (2005) …………………….*passim*

*United States v. Caba*, 241 F.3d 98 (1st Cir. 2001) …………………………… passim

*United States v. Hughes*, 2005 U.S. App. LEXIS 1189 (4th Cir.) ……………............18

*United States v. Humphrey*, 287 F.3d 422 (6th Cir. 2002) …………………………..18

*United States v. Irvin*, 2 F. 3d 72 (4th Cir. 1993) ………………………………...12, 13

*United States v. Kinter*, 235 F. 3d 192 (4th Cir. 2000) ……………………………..8, 15

*United States v. Levy*, 379 F. 3d 1241 (11th Cir. 2004) ……………......................13

United States v. Lopez, 248 F. 3d 427, 432 (5th Cir. 2001) ………………………………13

United States v. Tayman, No. 94-1575-AM (E.D. Va. May 1, 1995) ……………………..6

Williams v. Taylor, 529 U.S. 362 (2000) …………………………………………………..8

Yates v. Aiken, 484 U.S. 211 (1987) ……………………………………………….......6, 7, 10

## STATUTES

§9A.20.021 (1) (b)…………………………………………………………………………..11

18 U.S.C. §3553(b) (1) …………………………………………………………………..7

21 U.S.C. §841 …………………………………………………………………………..11, 13

21 U.S.C. §848 ……………………………………………………………………   12

28 U.S.C. §2255 …………………………………………………………………………1, 5, 6, 7, 17

## OTHER AUTHORITIES

Federal Rules of Civil Procedure:   Rule 15(a) and (c) ………………………………1

*Webster's II New Riverside University Dictionary* ……………………………………..3

## U.S. CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. V ……………………………………………………………………*passim*

U.S. Const.  Amend. VI …………………………………………………………………..*passim*

I. **RELEVANT PROCEDURAL AND FACTUAL HISTORY**

The Petitioner was indicted on December 22, 1999, with a superseding Indictment issued on October 11, 2000. The jury trial before this court took place from May 8, 2002, through May 23, 2002. The Jury issued its specific verdict on May 28, 2002.

The U.S. District Court sentenced the Petitioner to 121 months, and entered its judgment of conviction on September 16, 2002. The Petitioner timely filed his Notice of Appeal on September 16, 2002. The First Circuit Court of Appeals affirmed the District Court's judgment of conviction and sentence on August 14, 2003.

The Petitioner timely filed an application pursuant to 28 U.S.C. *§2255* with this District Court on November 12, 2004. Thereafter, he filed a Motion to stay the proceedings and hold in abeyance until he could supplement said petition with the appropriate Memorandum of Law in support thereof. The Petitioner hereby supplements his original filing with the following Memorandum in conformity with the Order granting said stay as issued by this Honorable Court on January 5, 2005.

This section of the Petitioner's Memorandum is intended to briefly place the procedural aspects of his proceedings in their appropriate context, and to provide this Court with an overall general understanding of the relevant facts for its consideration herein. Additional specific facts, which are pertinent to certain legal arguments, are included and set forth in the related argument sections being more appropriate thereto.

II. **THE PETITIONER WAS SENTENCED BEYOND THE MAXIMUM PENALTY AS REFLECTED IN THE JURY'S VERDICT, OR OTHERWISE ADMITTED BY THE PETITIONER, BEING IN VIOLATION OF THE RULE  ANNOUNCED IN APPRENDI, *AND AS FURTHER* DEFINED AND CLARIFIED BY *BOOKER*** 

The Supreme Court recognized a Federal Defendant's right to be sentenced based only upon the prescribed penalty as reflected in the Jury's verdict for the penalty, and not only on the face of the statute of conviction, but also as to the maximum penalty depicted in the Federal Sentencing Guidelines. See, *United States v. Booker, 543* U.S. _ ,  No. 04-104 (2005).

The *Booker* decision, authored by Justice Stevens, determined that in order to bring the Federal Sentencing Guidelines in conformity with a Defendant's Sixth Amendment rights, that the Jury must determine *"each element'* that is crucial in deciding the sentence to be imposed. At first blush, an untrained layman might surmise that the opinion is not decisive. However, a careful reading and analysis of this opinion evinces otherwise.

5

First, as this Court is aware, this decision from the U.S. Supreme Court has two separate significant substantive holdings.  First, the Court determined that the Sixth Amendment guarantees, as had been previously explained by the Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), do in fact apply to the Federal Guidelines. Indeed, the key wording in the opinion is the word "reaffirm." *Id.*  The *Booker* decision (as the *Blakely* decision vis-à-vis State Defendants) did not create or dictate any new legal precedents, or establish any new Constitutional rules.

The *Booker* decision merely clarified, reaffirmed, and unequivocally extended its holdings in *Apprendi* to apply to the Federal Guidelines.  Justice Stevens' specific wording is very significant, since he had previously decided in *Yates v. Aiken*, 484 U.S. 211 (1987) that, "when a decision of the United States Supreme Court has merely applied settled precedents to new and different factual situations, no real question arises as to whether the latter decision should apply retroactively; in such cases, it is a foregone conclusion that the latter decision applies in earlier cases, because the later decision has not in fact altered the rule in any way." *Id.* at 217, and FN (3).

In any reading and analysis of these related decisions one must give careful consideration to the underlying fact that Justice Stevens wrote all three decisions for the Court,  i.e., *Apprendi, Booker* and *Yates*.  Therefore, it cannot be gainsaid that in essence, that the *Booker* decision merely applied the Sixth Amendment holdings of *Apprendi* to the Federal Guidelines via its *Booker* decision. Surely, *de minimus*, for all those Defendants whose convictions became final after A*pprendi* was decided, the retroactivity question of *Booker* to timely filed petitions under 28 U.S.C. §2255 is an issue that has been previously resolved. <u>Yates,</u> *supra.*

See also, *Williams v. Taylor,* 529 U.S. 362 (2000), being yet another opinion by Justice Stevens holding that retroactivity is of no question, since *Strickland v. Washington,* 466 U.S. 668 (1984) was already decided before the Defendant's conviction became final.  Viewed through the lens of *Yates, supra,* Justice Stevens knew and made clear that it was the intention of the court that the *Booker* decision would automatically require the lower Courts to apply the *Apprendi* decision to all Defendants whose convictions were not yet final when it was decided, including those collateral proceedings under 28 U.S.C. §2255.

The *Booker* opinion unequivocally and clearly states therein that, "we reaffirm our holding in *Apprendi*."  The word "reaffirm" as defined in *Webster's II New Riverside University Dictionary* states, "to affirm or assert again."  In other words, "we [assert once again] our holding in *Apprendi*."  Thus, there was no new rule required to be announced in *Booker,* but only a

6

reaffirmation and clarification of the existing rule which the court had originally announced in *Apprendi*. Therefore, according to *Yates*, the *Booker* decision "merely applied settled precedents (*Apprendi)* to new and different factual situations," and "no real question arises as to whether the later decision [Booker] should apply retroactively." Yates, 484 U.S. at 211. (See also, Stringer v. Black, 504 U.S. 222, 227 (1992), "a case decided after a Petitioner's conviction and sentence became final may not be the predicate for Federal habeas corpus relief unless the decision was dictated by precedent existing when the judgment in question became final.")

Second, this additional part of the Court's opinion in *Booker* appears at first glance to be a more complicated application of these same legal principles. However, upon careful reflection Justice Breyer's holding is quite simple. After the majority's clarification of its prior holding in *Apprendi,* the Court attempts to remedy the existing problem of bringing the Federal Sentencing Guidelines into compliance with the guarantees under the Sixth Amendment. It finds and confirms that the provision of the Federal Sentencing Guidelines that make the Guidelines mandatory, Title 18 U.S.C. §3553(b)(1), to indeed be unconstitutional. By excising that specific statutory provision and section, the Court attempted to bring into compliance its holding previously established in <u>*Apprendi.*</u>

This resulting substantive change in existing law altered the District Court's discretion by making the Guidelines merely advisory in nature when determining the correct Guideline Range. The significant question that nonetheless arises is: How will this new interaction play into the correction of an improperly calculated Guideline Range? This question is irrelevant in the context of the matter now before this Court for several reasons. First, Justice Breyer limited the remedial holding of the Court to "... all cases pending on Direct Review or not yet final." <u>Booker. supra.</u>

Next, and more importantly, the *Ex Post Facto* Clause of the U.S. Constitution clearly establishes that a violation occurs when a change in law "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts.*"* See, *California Department of Corrections v. Morales,* 514 U.S. 499, 504-505 (1995) (quoting, *Collins v. Youngblood,* 497 U.S. 37, 43 (1990)). Simply stated, if the District Court in reliance upon its newly granted discretion using the Guidelines as merely advisory during the re-sentencing, upon the granting of the Petitioner' Title 28 U.S.C. §2255, refuses to sentence Petitioner under the Guideline Range reflected in the Jury's verdict alone (thereby sentencing him to a higher range), the Court will violate the Constitutions' *Ex Post Facto* Clause by increasing the punishment of the criminal act.

III. **THE *BOOKER DECISION* DID NOT ESTABLISH ANY NEW RULE OF CRIMINAL PROCEDURE, BUT MERELY REAFFIRMED WHAT WAS ALREADY EXISTING PRECEDENT CLEARLY ESTABLISHED PRIOR TO DATE THE PETITIONER'S CONVICTION BECAME FINAL.  THEREFORE, IT MUST BE GIVEN ITS APPROPRIATE RETROACTIVE APPLICATION IN THIS CASE *SUB JUDICE*.**

   *A. Threshold Requirement:*

The first requirement under a reviewing Court's analysis when determining whether a judicial decision must be given a full retroactive effect, is to ascertain whether said decision announced a new rule.  If so, was this new rule dictated by previously existing precedent established prior to the Defendant's conviction becoming final, or was it merely the application of said existing well-established principles. Thereafter, in the event the reviewing Court determines the decision rendered a new rule which was not dictated by precedent, the Court must then further determine whether the subject rule itself is one that is procedural or substantive in nature. Under this threshold analysis, if the Supreme Court in *Booker* merely "applied settled precedents to new and different factual situations, no real question arises as to whether the later decision should be apply retroactively." *Yates, supra.*

Therefore, we must examine the *Booker* decision closely to see if (as a matter of law) it announced a new rule, or is just the latest in a series of relates cases which all emanate from *Apprendi*.  There can be no reasonable disagreement that *Apprendi* held, *inter alia*, that any fact which affects the statutory maximum sentence must be both charged in the Indictment, and then proven to a jury beyond a reasonable doubt. The Court relied upon and grounded its ruling on the Fifth and Sixth Amendments. The Fifth Amendment's Due Process Clause requires that every element in a criminal offense be proven beyond a reasonable doubt, and the Sixth Amendment gives defendants the right to have juries make that determination.

Since the A*pprendi* decision was based upon a ruling as to a specific statute, the Supreme Court in their landmark decision did not explicitly decide that the tops of the currently-calculated Guideline Ranges were also to be considered statutory maximums. Although there certainly was persuasive argument to support that they in fact were such, the Courts of Appeals which have considered this question each held that *Apprendi* did not specifically apply to the Federal Sentencing Guidelines. See, e.g., *United States v. Kinter,* 235 f3d 192 (4th Cir. 2000); *United States v. Caba,* 241 F.3d 98 (1st Cir. 2001) (collecting cases).

8

However, the long and well-established traditional principle set forth in *Teague v. Lane,* 489 U.S. 288 (1989), to the effect that a case announces a new rule if the ``result was not dictated by precedent existing at the time the Defendant's conviction became final," was referring only to the precedents established by the Supreme Court. In this context, and using the rule announced earlier in *Apprendi,* the *Booker* Court held that the Sentencing Reform Act violated defendants Constitutional rights in two ways. First, the Act violated their Sixth Amendment right because it required Judges, and not Juries, to decide facts which affected the maximum sentence to which the defendants were exposed. Second, it violated their Fifth Amendment rights because it allowed Judges to find those facts by a mere preponderance of the evidence, rather than beyond a reasonable doubt, and it did not limit the sentence calculation to only those facts alleged and plead in the Indictment.

Indeed, such a ruling was surely dictated by the decisions in *Jones v. United States* 526 U.S. 227 (1999), A*pprendi, supra,* and in *Blakely v. Washington,* No. 02-1632 (June 24, 2004). In any event, it certainly cannot be considered a "new rule" for those Defendants whose convictions became final after *Apprendi* was decided on June 26, 2000. Justice Stevens (dissenting in the remedy portion of the *Booker* decision) opined that "prosecutors could avoid an A*pprendi* problem simply by alleging in the Indictment the facts necessary to reach the chosen Guidelines sentence." Therefore, how could the *Booker* Court hold that a mandatory application of the Federal Guidelines (which violates a defendant's Constitutional right to a Jury Trial on any disputed factual subject which increases his/her maximum punishment) does not apply retroactively to criminal cases which became final before its release? The answer to the question is that the case did *not* establish a so-called "new rule," but merely applied previously existing well-settled precedents – including, but not limited to, that of *Apprendi.*

Furthermore, although one might argue that the *Booker* decision was more concerned with the identity of the decision maker, rather than with the primary conduct that was unlawful, such an analysis is premature and misplaced for the purposes of deciding whether this case announced a new rule. This basic reasoning is the fact that a reviewing Court must first determine when a Defendant's conviction became final, and then whether the decision in question was "dictated by precedent existing at the time the Defendant's conviction became final." See, *Teague, supra.* The *Apprendi* decision was certainly very concerned with the identity of the decision maker, and more importantly, the standard of proof required in the making of the subject decision.

Therefore, it cannot be denied that *Booker* merely applied the procedural rule announced in *Apprendi* to the Federal Guidelines, and did not announce a new rule which was not dictated by prior precedent. Even if the *Booker* Court could be considered to have announced a new rule by applying its A*pprendi's* rule specifically to the Federal Guidelines (which in fact it did not), such a rule would be deemed substantive and not procedural in its application and nature. The procedural aspect of this rule was pre-established in *Apprendi, e.g.,* that any fact which increases the statutory maximum sentence must be charged in the Indictment and proved to a Jury beyond a reasonable doubt. The application of the A*pprendi* rule to the Federal Guidelines (a statute) is a substantive change in the law, and such a decision by the Supreme Court, according to their precedents, *must* be applied retroactively to the Petitioner in this instant action.

In summary, the Petitioner's conviction was not final when the rule announced in *Apprendi* was decided; therefore that rule (specifically being applied by *Booker* to the Federal Sentencing Guidelines) must be recognized and applied in the instant action. The lower Courts may not reevaluate such considerations under their own standards, as *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987), *Teague* and *Yates* (as shown below) have already established the proper standards on the lower Court's behalf. Indeed, in the case at bar, the *Booker* decision, as it relates to the Petitioner, is cognizable under §2255 because both *Booker* and "*Blakely* [are] basically an extension of the *Apprendi* rule." *In re Dean,* 375 F.3d 1287, 1289-90 (11th Cir. 2004).

First, in *Blakely, supra,* the Supreme Court rendered a decision which substantially impacted Sentencing Guideline schemes previously existing in many of the state courts' judicial systems. The *Blakely* Court applied the A*pprendi* ruling to a certain state sentencing system that allowed a Judge to find a fact that increased the Defendant's sentence by 37 months beyond the prescribed maximum punishment. In a 5-to-4 decision, the majority held that the defendant in the State of Washington, who received a 90-month sentence rather than a 53-month sentence, was entitled to relief because of the trial court's enhancement for "deliberate cruelty." This finding by the judge at sentencing relied upon facts which were not charged in the indictment, not admitted by the Defendant, and were not found by a jury beyond a reasonable doubt.

However, and not surprisingly in *Blakely*, the State Prosecutors (as the Federal Prosecutors did in *Apprendi*) attempted to circumvent the applicability of *Apprendi* by arguing that there was no *Apprendi* violations because the appropriate statutory maximum penalty was not 53 months, but rather a10-year maximum for Class B felonies found in violation of their

10

§9A.20.021 (1)(b).  As briefly mentioned above, this was precisely what the State and Federal Prosecutors argued after *Apprendi* was decided in 2000, i.e., that the maximum penalty for *Apprendi* purposes could only be determined on the face of the statute applicable to the conviction, and the lower Courts had previously adopted their arguments *in toto.*

Nevertheless, the Supreme Court, in *Blakely, supra,* held that "our precedents make *clear,* however, that the statutory maximum for *Apprendi* purposes is the maximum sentence a Judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the Defendant.*"*  Also, the Supreme Court's *Blakely* and *Booker* rulings clarify and define what a defendant's rights are with respect to being sentenced to the maximum penalty for *Apprendi* purposes. This can only be reflected in the jury's verdict alone, even when such a maximum penalty may be authorized by the Sentencing Guidelines  -- as opposed to merely the face of the statute of conviction. Indeed, before and even after *Blakely,* if a Defendant were sentenced below the maximum penalty set forth on the face of a statute of conviction, e.g., §841(b)(1)(C)'s maximum penalty of 20 years, the lower Courts would deny such a Defendant *Apprendi* relief regardless of what punishment the jury's verdict actually reflected.

Mirroring the State's position in A*pprendi,* the First Circuit Court of Appeals, in *Caba, supra,* held that *"Apprendi* simply does not apply to Guideline findings (including, *inter alia,* drug weight calculations) that increase the Defendant's sentence, but do not elevate the sentence to a point beyond the lowest applicable statutory maximum." *Id.*  Thus, the *Caba* Court's holding and analysis, albeit mistaken, not only circumvented all Defendants' rights to be sentenced only on the facts reflected in the Jury's verdict (even if their convictions were not final when *Apprendi* was decided), but also created an impediment to those who wanted to explicitly raise the issue using *Apprendi* for precedents in both the District Court and on direct appeal.

However, the *Blakely* decision was rendered on June 24, 2004, and it put into question the wisdom and logic of the *Caba* holding.  Although the principles announced in *Blakely* implicitly overruled the untenable holding of *Caba*, nonetheless the holding in *Caba* remained the precedent in this First Circuit.  This was primarily due to the argument that the *Blakely* decision failed to state how that case directly affected the Federal Sentencing Guidelines. See, *Blakely, supra.* Fortunately for the Petitioner (and all the other similarly situated defendants for whom convictions were not final when *Apprendi* was decided), the Supreme Court explicitly overruled *Caba in toto*, via its substantive holding and clarification in *Booker.* Consequently, his legal impediment (the prior holding in *Caba)* has now been removed for further consideration. The Petitioner's objections and position are now substantiated by

11

means of *Booker's* substantive holding.

### B. *Apprendi's procedural rule as applied to the guidelines can only be deemed to create a substantive rule:*

The Petitioner will now discuss for this court's consideration the fact that the *Booker* decision did not announce a "new rule" of criminal procedure, which otherwise could arguably not be given retroactive application under such factual circumstances presented here. The guiding principle of law used to determine whether a rule of criminal law is substantive, rather than procedural, is not always a bright one. See, *Robinson v. Neil,* 409 U.S. 505, 509 (1973) ("[W]e would not suggest that the distinction that we draw is an ironclad one that will invariably result in the easy classification of cases in one category or the other.") Nevertheless, when a Court uses a procedural rule of law as a Constitutional gauge for the purposes of determining whether a statute offends the Constitution, such an interpretation *(if* it creates a new rule) is substantive in nature. "[B]ecause *Teague,* by its terms applies only to procedural rules, ... it is inapplicable to the situation in which this Court decides the meaning of a criminal statute." *Bousley v. United States,* 532 U.S. 614 (1998).

The *Booker* Court applied Ap*prendi's* procedural rule to the Guidelines, and (at best) created a substantive rule of law. The Supreme Court has "consistently held that the Guidelines have the force and effect of laws." *Booker, supra.* See, e.g., *Mistretta v. United States,* 488 U.S. 361, 391 (1989); *Stinson v. United States,* 508 U.S. 36, 42 (1993). The *Booker* case involved both the interpretation of the Sentencing Guidelines (a criminal statute), and the procedural safeguards attendant to a defendant's right to have a Jury make all factual findings which may lead to the maximum permissible punishment. Although the latter half of this hybrid stems from *Apprendi,* the first half strays from the *Apprendi* procedural rule in such a material way as to undermine any attempted analogy.

However, since both the Supreme Court and the Fourth Circuit Court of Appeals have decided cases which evince that *Booker (*if it could be said that it created a new rule) at best gave birth to a substantive rule of criminal law. See, *Richardson v. United States,* 526 U.S. 813 (1999); *United States v. Irvin, 2* F.3d 72 (4th Cir. 1993). First, the core holding in *Richardson* required Jury unanimity as to each violation in the series *of* violations needed to convict under the Continuing Criminal Enterprise (CCE) statute, 21 U.S.C. §848. See, *Richardson,* 526 U.S. at 818-19.

Due to its substantive nature, several Courts of Appeals have made *Richardson* retroactively applicable to cases pending on collateral review. See, e.g., *Santana-Madera v. United States,* 260 F.3d 133, 138-39 (2nd Cir. 2001); *United States v. Lopez,* 248 F.3d 427, 432 (5th Cir. 2001); *Murr v. United States,* 200 F.3d 895, 906 (6th Cir. 2000). Second, in *Irvin, supra,* a unanimous panel held that a District Court must determine the quantity of narcotic reasonably foreseeable to the Defendant before applying the mandatory minimum sentence provisions of 21 U.S.C. §841. In other words, mandatory minimum sentences under §841 must be based upon the amount of drugs which were reasonably foreseeable to the individual co-conspirator being sentenced, rather than on the entire amount of drugs attributable to the conspiracy as a whole. This decision was also applied to Defendants on collateral review. See *Proctor v. United States, No.* 92-72-N-06 (E.D. Va. Nov. 7, 1994); *United States v. Tayman.* No. 94-1575-AM (E.D. Va. May 1, 1995).

In a similar manner, the Supreme Court clarified in *Booker* that, its "holding in *Blakely* applies to the Federal Sentencing Guidelines." Furthermore, the *Booker* Court held that, "[O]ur precedents, we explained, make clear that the statutory maximum for *Apprendi* purposes is the maximum sentence a Judge may impose solely on the basis of the facts reflected in the Jury verdict or admitted by the Defendant." *Booker, supra*. There is nothing new or procedural about this rule (if you can call it a rule), because in essence this purported rule is merely defining and clarifying (through the lens of the Fifth and Sixth Amendments) what a statutory maximum penalty is under the Sentencing Guidelines (a statute). Such an interpretation could never be construed as being procedural. Although one must admit, that the phrasing does have a procedural ring to it, but every substantive ruling can be phrased to sound similarly procedural in nature.

For example, where a new decision announces that specific intent is an element of a statutory criminal offense, the issue could be phrased as to whether a Court must first determine that the Defendant had specific intent prior to its determination of the applicability of the statute. Although *Booker's* rule may also be phrased as merely procedurally, its underlying essence and nature is clearly substantive. In summery, *Booker* is clearly and plainly a ruling concerning and affecting the Constitutionality of the way and manner upon which a defendant may be lawfully sentenced -- being the ultimate heart and soul of substantive criminal law.

### C. *Teague's Exceptions:*

The Petitioner will brief review the principles of *Teague*. Since, *arguendo*, if the Court concludes that *Booker* announced a new rule, and that that rule was merely a new rule of criminal procedure, the *Booker* decision would nonetheless squarely fit within one of *Teague's* exceptions - watershed rules. The Supreme Court in *Booker* reiterated its holding in *Apprendi*, namely, that under the Fifth and Sixth Amendments any fact (other than a prior conviction) which increases the maximum penalty for a crime must be charged in the Indictment and proven beyond a reasonable doubt by a jury's verdict. *Apprendi, supra,* 530 U.S. at 476. Applying this rule to the Federal Guidelines, the *Booker* Court did not establish a new Constitutional rule of criminal procedure which broke new ground, or imposed a new obligation on the Federal Government which had not been "dictated by precedents existing at the time the Defendant's convictions became final." *Teague, supra,* 489 U.S. at 301. In *Teague,* the Supreme Court reevaluated the retroactive application of new Constitutional rules of criminal procedure to collateral proceedings, and held that a habeas corpus Petitioner must rely on the law in existence at the time his conviction became final, unless he could satisfy one of two certain exceptions.

Prior to embarking on a discussion of those two exceptions, the Petitioner will first set out the basic facts applicable to this discussion in that his conviction became "final" on November 14, 2003. *Booker,* based upon the prior *Apprendi* rule, was decided on January 12, 2005. However, the *Booker* Court opined, "We reaffirm our holding in *Apprendi:* Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a Jury verdict must be admitted by the Defendant or proved to a Jury beyond a reasonable doubt." *Booker, supra.* Thus, the *Booker* Court only used the procedural rule adumbrated in *Jones, supra,* and subsequently announced in *Apprendi* as a Constitutionally-compelled rule of law. The Petitioner's conviction in the case *sub judice* became final on November 14, 2003, and the *Apprendi* rule became an established cornerstone precedent on June 26, 2000. *Booker,* then, was "dictated by precedent existing at the time the Defendant's conviction became final." *Teague, supra,* 489 U.S. at 301.

Even, *arguendo*, if the *Booker* decision created a new rule which was not dictated by precedent existing when the Petitioner's conviction became final (although that is clearly not true), its substantive application of the *Apprendi* rule satisfies the second exception under *Teague*. However, the Petitioner will now discuss both exceptions:

14

(1). A new rule should be applied retroactively if it places "certain kinds of primary, private, individual conduct beyond the power of the criminal law-making authority to proscribe;" and

(2). "Watershed rules of criminal procedure." *Teague, supra,* 489 U.S. at 307.

The first exception obviously has no application here, and no further discussion is required on that point. As for the second exception, it does apply to "watershed rules that not only improve the accuracy [of criminal proceedings], but also alter our understanding of bedrock procedural elements essential to the fairness of a proceeding." *Sawyer v. Smith, 497* U.S. *227,* 242 (1990) (quoting *Teague, supra, 489* U.S. at 311). Indeed, the *Apprendi* principle, as applied by *Booker* to the Federal Guidelines, is in fact and unequivocally such a watershed rule. See, *Kinter, supra* ("we agree with the conclusion ... that the relevant maximum under *Apprendi* is found on the face of the statute rather than the Sentencing Guidelines); *Caba, supra.* Additionally, the *Kinter* Court also held that, "if this analysis were correct, *Apprendi* would indeed work a watershed change upon Federal Court's sentencing practices." *Id.* See also, *United States v. Levy,* 379 F. 3d 1241 (11th Cir. 2004) *("Ardlev* and *Levy* are only an attempt to limit the impact of the Supreme Court's recent watershed sentencing decisions.")

Justice O'Connor, the author of *Teague,* characterized the majority opinion in *Apprendi* as one which announced "a watershed change in Constitutional law." *Apprendi, supra, 530* U.S. at *524* (O'Connor. J., dissenting). Justice O'Connor's delineation of the *Apprendi* rule's attributes are more fully materialized in *Booker* by giving birth to an undeniable watershed sentencing decision of judicially historic significance. Furthermore, the Supreme Court case of *Schriro v. Summerlin, 542* U.S. _ , 124 S. Ct. 2519 *(*2004*),* also provides compelling support that *Booker* passes through the second exception for retroactivity on timely filed initial habeas corpus cases. Although the Supreme Court in *Summerlin* rejected the retroactivity of its new procedural rule announced in *Ring v. Arizona, 536* U.S. *584 (2002)* (holding that a Jury, not a Judge, must make the findings necessary to impose the death penalty), it did so because the possibility of inaccuracy was minimal, in that both fact finders there were required to use the same "beyond a reasonable doubt" standard.

Before *Booker,* on the other hand, Judges determined sentencing enhancement facts by a preponderance of the evidence. After *Booker,* those facts must now both be determined by a Jury and proven beyond a reasonable doubt. Accordingly, before *Booker,* the fact finding process so "seriously diminishe[d]" accuracy as to produce an "impermissibly large risk of

15

injustice." *Summerlin, supra,* 159 L.Ed.2d at 451.  The *Booker* rule, which remedied that risk, is therefore exempt from *Teague's* retroactivity bar under the watershed rule of criminal procedure exception.  <u>See</u>, e.g., *In re Winship, 397* U.S. *358* (1970): *Cf. Ring, supra,* as discussed in *Summerlin, supra.* It is axiomatic that the core holding in *Booker* invalidated the Federal Guidelines, based upon the Sixth Amendment Jury Trial violations, as well as *Apprendi's* basic Due Process doctrine. Jointly, those legal bases being of Constitutional proportions compel retroactivity. <u>See</u>, *Winship, supra, 397* U.S. at 363-64 (requiring juvenile charges to be proven by proof beyond a reasonable doubt, instead of by a preponderance of the evidence. The court's reasoning was that the reasonable doubt standard, "is a prime instrument for reducing the risk of conviction resting on factual error. The standard provides concrete substance for the presumption of innocence - that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law.")

      Therefore, since the Supreme Court's decision in *Apprendi,* as clarified and reaffirmed in *Booker,* requires enhancement facts which increase a Defendant's maximum penalty to be proven by proof beyond a reasonable doubt, instead of by a preponderance of the evidence, (reasoning that enhancement facts which increase a Defendant's prescribed punishment are the functional equivalent of the elements of the offense), retroactivity must be given to such a "bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." *Winship, supra.* Furthermore, because *Booker's* "new rule" *(if* it can be considered a new rule) of Constitutional law rests on both *Apprendi's* Due Process doctrine, and *Winship's* Sixth Amendment right to Jury Trial with respect to the "beyond a reasonable doubt" standard, according to Supreme Court precedent, retroactivity to timely filed initial habeas corpus petitions must be given – at a minimum.  Consequently, Booker requires that this court enter an appropriate an appropriate order vacating the Petitioner's presently existing unconstitutional sentence.

      In sum, the application of A*pprendi's* so-called procedural rule pertaining to the Sentencing Guidelines in fact created a substantive rule of criminal law which not only must be applied retroactively due to its substantive constitutional nature, but also because it satisfies the watershed rule exception under *Teague.*  Surely, the *Booker* decision now mandates, *inter alia*, that the District Court must have a finding of fact(s) from the Jury using the "beyond a reasonable doubt" standard to justify the enhancing of a defendant's sentence beyond the prescribed maximum penalty he is facing, even under the Sentencing Guidelines.

The change from the "preponderance of the evidence" standard to the "beyond a reasonable doubt" standard, unequivocally improves the accuracy and fairness of all criminal sentencing proceedings. It forever alters the Court's responsibilities of insuring the bedrock procedural elements - sentencing under the Guidelines - which is essential to the fundamental fairness of sentencing proceedings. See, *Winship, supra* ("the standard provides concrete substance for the presumption of innocence - that bedrock axiomatic elementary principle whose enforcement lies at the foundation of the administration of our criminal law.") Accordingly, *Booker* is clearly exempt from *Teague's* non-retroactivity bar, and therefore it must be applied to these facts and circumstances in granting the requested relief to the Petitioner in this action.

### D. The Application of United States v. Booker:

Since we have established that *Booker* must be applied retroactively in the this collateral proceeding under §2255, the Petitioner will thus make application of the A*pprendi* rule to this action, to the full extent in which it has now been further clarified, defined and reaffirmed in *Booker, supra.* The Petitioner was found guilty by a Jury who issued their verdict on May 23, 2002, via a specific verdict form. The Jury made a finding that the Petitioner was guilty of one count of racketeering, and two counts of obstruction of justice. Under the then existing United States Federal Sentencing Guidelines, a violation of obstruction of justice mandates a Base Offense Level of 12, and racketeering a Base Offense Level of 19. Since the Petitioner had no criminal record or history, his Criminal History Category was I. Therefore, the maximum penalty for such a finding under those facts and circumstances under the Guidelines was 30-37 months.

Nevertheless, over the Petitioner's objections, the District Court adopted and followed the recommendations contained in Pre-sentence Report. Without even the benefit of affording the Petitioner the usual and customary opportunity to engage in a meaningful and informative sentencing hearing, the court chose to precipitously impose the harshest sentence available under the then *mandatory* Guidelines. Accordingly, the Petitioner was sentenced to the subject 121 months confinement. However, the said 121-month sentence was not reflected in the findings contained in the Jury's verdict. In addition thereto, the facts upon which the District Court based its decision to enhance the Petitioner's sentence an additional 84 months beyond the maximum penalty authorized by the Jury's verdict were so-called findings of fact found by the Judge merely by a "preponderance of the evidence."

The District Court presumably made this sentence determination based upon the then existing First Circuit Court of Appeals misapplication and erroneous understanding of A*pprendi,* as has been shown in *Caba, supra:* "Even after Apprendi, the existence *vel non* of sentencing factors that boost a Defendant's sentence, but do not trip a new statutory maximum, remain grist for the District Judge's mill under a preponderance-of-the-evidence standard." Holding onto his position, the Petitioner relentlessly objected to the enhancements recommended in the PSI and adopted by the District Court, all to no avail. The *Caba* Court's decision precluded the Petitioner from explicitly using *Apprendi* as precedent during his sentencing and direct appeal to invalidate, *de minimus*, these unauthorized enhancements.

Notwithstanding, the Petitioner unwaveringly objected to these unjustifiable enhancements during both his sentencing and on direct appeal.  These objections were primarily based upon *Apprendi's* Due Process grounds by challenging the propriety of the standard used to enhance his sentence. See, *United States v. Humphrey, 287* F.3d 422 (6th Cir. *2002)* ("the preservation of a Constitutional objection should not rest on magic words, it suffices that the District Court be apprised of the objection, and offered an opportunity to correct it.  Humphreys attorney never formed the words '*Apprendi,*' but we find the substance of his objection to the drug quantity determination, combined with his objection to the standard of evidence to be used, sufficient to notify the District Court of the basis for the objection, and sufficient to preserve the issue for its *de novo* review on Appeal.")

Although the *Humphrey* decision was in the context of a Direct Appeal, the principles emanating *from Humphrey* evince that the Petitioner did not procedurally waive this issue, and therefore, he does not have to show or demonstrate cause and prejudice stemming therefrom.  In *Booker,* the Supreme Court held that the "Sixth Amendment is violated when a District Court, acting pursuant to the Sentencing Reform Act and Guidelines, imposes a sentence greater than the maximum authorized by the facts found by the Jury alone." *United States v. Hughes,* 2005 U.S. App. LEXIS 1189 (4th Cir*.). In* this specific instance the District Court, in complete violation of the core principles enunciated in *Booker,* sentenced the Petitioner an additional eighty-four (84) months beyond the maximum penalty otherwise permissible by facts actually found by the Jury beyond a reasonable doubt.   Therefore, the Petitioner is entitled to have his present sentence vacated, and that a new sentencing hearing be held to cure the existing *Apprendi /Booker Constitutional* violations which have been imposed on the Petitioner in the case *sub judice.*

…
…

## IV. **CONCLUSION**

WHEREFORE, the Petitioner prays that this Honorable Court immediately VACATE and set aside his presently existing illegal and unconstitutional sentence as required by the mandate set forth in *Apprendi,* and as further clarified and reaffirmed in *Blakely* and *Booker.* The Petitioner further prays that this Court grant him any and all other relief it may find to be just and proper under these particular circumstances.

DATED:  April 29, 2005

/s/  E. Peter Mullane
_____
E. Peter Mullane, Esquire
BBO #360000
MULLANE, MICHEL & McINNES
132 Mount Auburn Street
Cambridge, MA 02138-5736
Tel.:  (617) 661-9000
Fax:  (617) 661-2915
E-Mail:  peter@3mlaw.com


/s/ E. Peter Mullane
_____
Edward J. Lonergan, Esquire
BBO #303960
101 Merrimac Street (Suite 800)
Boston, MA 02114-9601
Tel.:  (617) 371-0430
Fax:  (617) 227-7177
E-Mail:  elone14746@aol.com

## *CERTIFICATE OF SERVICE*

I, E. Peter Mullane, Esquire, hereby certify that a true copy of the foregoing Motion and Memorandum was duly served this 29th day of April, 2005, upon John H. Durham, Special U.S. Attorney, by first class mail, postage prepaid, addressed as follows:

> John H. Durham, Asst. U.S. Attorney
> U.S. Attorney's Office
> 157 Church Street (23rd Floor)
> New Haven, CT 06510
>
> /s/ E. Peter Mullane
> _____
> E. Peter Mullane, Esquire